UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JOSE LUIS RODRIGUEZ ARRIETA,<br>Petitioner,<br>v.<br>JULIO HERNANDEZ, et al.,<br>Respondents. | CASE NO. 2:26-cv-03674-BAT<br>**ORDER GRANTING HABEAS PETITION** |

Petitioner Jose Luis Rodriguez Arrieta seeks 28 U.S.C. § 2241 habeas relief, alleging that Respondents violated his right to procedural due process by arresting and detaining him at the Northwest ICE Processing Center (NWIPC) without pre-deprivation notice and a hearing before a neutral decisionmaker.[1] Dkt. 1. For the reasons stated below, the Court **GRANTS** his habeas petition.

## BACKGROUND

Petitioner is a native and citizen of Venezuela. Dkt. 1, at 3. On July 16, 2024, he arrived for a CBP One appointment at the Calexico West Port of Entry in Calexico, California.[2] On that

[1] Petitioner appears to have withdrawn his Administrative Procedures Act (APA) claim. Dkt. 9, at 2. Because of this, and because his petition is granted based on a constitutional violation, the Court does not address the APA claim.

[2] "CBP One is an example of how the U.S. Government has expanded access to lawful and orderly pathways and processes, even as it continues to apply strengthened consequences for

day, he was paroled into the United States for a period of two years pursuant to the Immigration and Nationality Act (INA) § 212(d)(5)(A), 8 U.S.C. § 1182(d)(5)(A); and was also served with a Notice to Appear (NTA), charging him with being an immigrant not in possession of valid documentation under INA § 212(a)(7)(A)(i)(I), 8 U.S.C. § 1182(a)(7)(A)(i)(I). Dkt. 7 ¶¶ 5–6 (Declaration of Deportation Officer Kurtis Reed) [hereinafter Reed Decl.]. Shortly thereafter, Petitioner was permitted to transfer venue to Portland, Oregon, received a social security number and driver license, and was scheduled for an in-person Master Hearing on June 1, 2027. Dkt. 1-1, at 11, 13, 19. On February 19, 2025, Petitioner submitted an asylum application in which he stated that he had left Venezuela because his life had been threatened as a member of an opposition party, he was physically assaulted, and his concerns had been ignored by the police and government officials. Dkt. 1-1, at 32–34. On September 1, 2025, Petitioner was issued an Employment Authorization Document (EAD) valid until August 30, 2030. Dkt. 1-1, at 36.

On August 30, 2026, Immigration and Customs Enforcement (ICE) officers followed Petitioner's car and arrested him pursuant to an I-200 administrative arrest warrant created on the same day. Dkt. 8-3, at 3 (Form I-213 Record of Deportable/Inadmissible Alien [hereinafter Form I-213]; *see* Dkt. 8-4, at 2 (Form I-200 Warrant for Arrest of Alien) [hereinafter Form I-200]. According to the arresting officer, Petitioner "failed to report to the Non-Detained Unit," Form I-

---

unlawful and unauthorized entry." Department of Homeland Security, "Fact Sheet: CBP One Facilitated Over 170,000 Appointments in Six Months, and Continues to be a Safe, Orderly, and Humane Tool for Border Management" (released Aug. 3, 2023; last updated Apr. 10, 2025), *available at* https://www.dhs.gov/archive/news/2023/08/03/fact-sheet-cbp-one-facilitated-over-170000-appointments-six-months-and-continues-be (last accessed Oct. 22, 2026). "Individuals who are processed into the United States are generally placed into immigration proceedings and, on a case-by-case basis, may be considered for a period of parole for up to two years to continue their immigration proceedings under Title 8 of the Immigration and Nationality Act. Individuals paroled into the U.S. are generally eligible to apply for an Employment Authorization Document (EAD)." *Id.*

213, at 3, but there was no reference to a specifically missed appointment or to Petitioner's humanitarian parole. In contradiction to Petitioner's entry into the country via the CPB One interview process and his asylum application, the ICE officers also stated that Petitioner had no pending petitions for relief and had no fear of returning to Venezuela.[3] *Id.* at 4. Petitioner was later transferred to NWIPC. *Id.*

According to I-94 Arrival/Departure records, Petitioner's humanitarian parole into the country expired on July 15, 2026. Reed Decl. ¶ 6; Dkt. 1-1, at 6; Dkt. 8-2, at 2. Although Respondents now assert that "[s]ystem checks revealed that Petitioner failed to report to the Portland ERO [Enforcement and Removal Operations] office after the expiration of his parole," Reed Decl. ¶ 7, they neither deny Petitioner's assertion that he has never failed to comply with any of his parole requirements nor do they contend that Petitioner had been directed to report to the Portland ERO office upon expiration of his parole. Petitioner states unequivocally that he was "never advised that [h]e needed to report to the non-detainee DHS/ICE unit by anyone at any time." Dkt. 9-1,at 39. Respondents' suggestion that Petitioner may have been arrested and detained on the basis of his expired humanitarian parole thus is not based on evidence but upon the presumption that all parolees have an affirmative duty to report to their local ERO office upon the end of the parole period notwithstanding the lack of instructions to do so. According to Petitioner, the next time he was scheduled to check in was at his Master Hearing on June 1, 2027. Dkt. 9, at 3.

---

[3] Petitioner notes that the officers also incorrectly reported that he "was known to be living in the Tigard area," Form I-213, at 3, though he has never lived in Tigard and has only ever resided while in Oregon in Beaverton. Dkt. 9-1, at 39. Petitioner was working as an Amazon delivery driver, and the ICE officers referred to the address of his employer as being within Tigard. Form I-213, at 3.

## DISCUSSION

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration custody. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

Petitioner contends that his re-detention on August 30, 2026, violated his right to due process under the Fifth Amendment of the U.S. Constitution. The Due Process Clause applies regardless of whether the noncitizen's presence is lawful, unlawful, temporary, permanent and regardless of whether detention falls under § 1225 or § 1226. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001); *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017) ("[I]t is well-established that the Due Process Clause stands as a significant constraint on the manner in which the political branches may exercise their plenary authority."). Petitioner's interest in not being detained is "the most elemental of liberty interests[.]" *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). As to Petitioner's situation in which he was initially released upon humanitarian parole and then re-detained, this Court and numerous others in this circuit have found such individuals have a protected liberty interest in remaining out of custody. *See, e.g.*, *N.I. v. Hermosillo*, 2026 WL 770038, at *2 (W.D. Wash. Mar. 18, 2026) ("Petitioner's mandatory detention under § 1225 does not eliminate his liberty interest"); *Osuna Benitez v. Hermosillo*, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1025, 1032-22 (N.D. Cal. 2025) (collecting cases); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (mandatory detention under § 1225(b) despite noncitizens' due process

rights and with no consideration of their deep financial, community, and familial ties in the country raises constitutional issues).

Respondents argue that Petitioner's parole expired on July 15, 2026, and that they were therefore permitted to re-detain him automatically under the statute and its implementing regulations without regard to notice or an opportunity to be heard. *See* Dkt. 6, at 5–6; 8 U.S.C. §§ 1182(d)(5)(A), 1225(b)(2); 8 C.F.R. § 212.5(1). Petitioner's liberty interest did not, however, expire along with his parole. *Omer G. G. v. Kaiser*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *Ramirez Tesara*, 800 F. Supp. 3d at 1136. "Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. Although Respondents cite *Kleber Vasquez v. Hernandez*, 2026 WL 2936770 (W.D. Wash. Sep. 30, 2026) for the proposition that the government had not acquiesced in Petitioner's ongoing liberty after his parole expired, Dkt. 6, at 6, here ICE officers did not cite parole expiration as the contemporaneous justification for Petitioner's arrest six weeks post-expiration. Instead, the officers referred loosely to Petitioner "fail[ing] to report to the Non-Detained Unit" without submitting the original parole document or citing what appointment he missed. The Court will not credit Respondents' *post hoc* justification for Petitioner's arrest. *See Novarro Gavalo v. Scott*, 2026 WL 2997801, at *3 (W.D. Wash. Oct. 6, 2026) (citing with approval *Abreu-Guerrero v. Chestnut*, 2026 WL 2664618, at *1 (E.D. Cal. Sep. 10, 2026), rejecting the government's *post hoc* rationalization for a "detain first, justify later" approach to people's liberty). Courts in this district have found that noncitizens retain a meaningful liberty interest even when the government sought to terminate or revoke still-active discretionary or recently

active release terms. *See E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316 (W.D. Wash. 2025); *Ramirez Tesara*, 800 F. Supp. 3d 1130; *Kumar v. Wamsley*, 2025 WL 2677089 (W.D. Wash. 2025). Courts in this district have also expressed skepticism about whether automatic revocation of parole without notice comports with due process. *See, e.g.*, *Pantoja Sanchez v. Scott*, 2026 WL 2620522, at *5 (W.D. Wash. Sep. 4, 2026); *Morales v. Hernandez*, 2026 WL 1753643, at *4 (W.D. Wash. June 18, 2026); *Espinoza Palacios*, 2026 WL 686138, at *8-*9; *Shinwari v. Hermosillo*, 2026 WL 262605, at *4 (W.D. Wash. Jan. 30, 2026). "Furthermore, the applicable regulations provide that if parole expires, a noncitizen 'shall again be released on parole' if their 'exclusion, deportation, or removal order cannot be executed within a reasonable time,' [unless] in the opinion of a DHS official 'the public interest requires that the alien be continued in custody.'" *Omer G.G.*, 815 F. Supp. 3d at 1109 (case citation and internal quotation marks omitted) (quoting 8 C.F.R. § 212.5(e)(2)(i)).

The Court finds that Petitioner has a protected liberty interest in his release. The Court therefore evaluates Petitioner's due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect that interest. The Court assesses (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

First, as noted above, Petitioner has considerable private interest in his freedom. Since his arrival in 2024, Petitioner has complied with all conditions of his humanitarian parole, secured a driver license and social security card, and applied for asylum; since he was granted work

authorization in 2025, he has worked full-time as an Amazon driver, paid taxes, sent money to Venezuela to support his daughter and mother, and expected to be at liberty for his next scheduled appointment, a Master Hearing on June 1, 2027. Dkt. 1-1, at 11, 13, 19; Dkt. 9-1, at 3–17, 24–33, 38–40. "When he was released from his initial detention on parole, Petitioner took with him a liberty interest which is entitled to the full protections of the due process clause." *Ramirez Tesara*, 800 F. Supp. 3d at 1136. That liberty interest exists regardless of ICE's initial discretion to release him on parole. *Id.* (citing *Pinchi*, 792 F. Supp. 3d at 1032); *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) ("The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty."). The first *Mathews* factor weighs in Petitioner's favor.

Second, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. Respondents do not dispute that Petitioner was arrested and immediately re-detained without any notice or opportunity to be heard. Dkt. 1, at 3; Dkt. 8-3, at 3. As discussed earlier, although Respondents allege that such arrest was based on a failure to report to the Portland ERO office after the expiration of his parole, Reed Decl. ¶ 7, such allegation is unsupported by any formal documentation, nor did the arrest occur until six weeks later based on a warrant created on the day of the arrest that did not refer to the expiration of parole. Moreover, the record does not reflect any finding by the government that (1) "the purpose for which parole was authorized" has been accomplished, or (2) "neither humanitarian reasons nor public benefit warrants" Petitioner's presence in the United States. 8 C.F.R. § 212.5(e)(2)(i); *see* 8 C.F.R. § 212.5(e)(1) (noting that if parole is terminated automatically based on expiration of the time for

which parole was authorized, the noncitizen is processed in accordance with § 212.5(e)(2), except as with respect to notice). Thus, even if Petitioner's parole was revoked "automatically," the government still declined to follow its own regulations, which it is not free to disregard. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). Regulations provide that, to parole Petitioner in the first place, DHS necessarily found release was justified by "urgent humanitarian reasons" or a "significant public benefit," and that Petitioner "present[ed] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Here ICE officers unilaterally overturned the DHS case-by-case determination of urgent humanitarian reasons or significant public benefit, and of no flight risk and no danger to the community based on a purported missed appointment that Respondents do not even attempt to document. The Court finds that the procedures used here—permitting ICE officers to make unilateral decisions about re-detention despite the absence of any justification for doing so and incorrectly stating basic facts about whether Petitioner had a pending asylum application and had a fear of being returned to Venezuela—run a high risk of erroneous detention, and notice and a hearing before a neutral decisionmaker would have a high probability of reducing that risk. The second *Mathews* factor weighs in favor of Petitioner.

Third, Respondents' interest in continued civil detention is low. While the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the public interest in civil detention without notice or a hearing is not high, where Petitioner has no criminal history , no missed appointments, and no propensity to flee the life and work he has established over the last two-plus years. Compared to Petitioner's liberty interest, Respondents' interest in re-detaining him without procedural safeguards is low. The third factor weighs in favor of

Petitioner.

The Court accordingly finds Petitioner has a protected liberty interest in his release from custody on the same terms as before and all the *Mathews* factors weigh in his favor. *See Ramirez Tesara*, 800 F. Supp. 3d at 1139. The Court accordingly finds Petitioner should be immediately released. *Id*. The Court also concludes that a post-deprivation bond hearing is an inadequate procedural safeguard because it occurs only after detention and thus fails to address an erroneous deprivation of liberty. *See, e.g., id.*; *cf. E.A. T.-B*, 795 F. Supp. 3d at 1323–24 (citing *Domingo v. Kaiser*, 2025 WL 1940179, at *3 (N.D. Cal. July 14, 2025) ("Even if Petitioner-Plaintiff received a prompt post-detention bond hearing under 8 U.S.C. § 1226(a) and was released at that point, he will have already suffered the harm that is the subject of his motion: that is, his potentially erroneous detention.")). Due process requires that, unless there are changed circumstances requiring mandatory detention under 8 U.S.C. § 1226(c), Petitioner must be provided with notice and a hearing before a neutral decisionmaker before he can be re-detained. *See Ramirez Tesara*, 800 F. Supp. 3d at 1139; *Pinchi*, 792 F. Supp. 3d. at 1038.

## CONCLUSION

For these reasons, the Court **GRANTS** the habeas petition, Dkt. 1, and **ORDERS**:

1. Respondents and all their officers, employees, attorneys, and people acting on their behalf or in concert with them shall (a) **RELEASE** Petitioner within 24 hours of entry of this order on the terms of his most recent release, and (b) file a status report certifying he has been released within 48 hours of entry of this order.

2. Unless detention is statutorily mandatory under 8 U.S.C. § 1226(c), which is currently not the case, Respondents and all their officers, employees, attorneys, and people acting on their behalf or in concert with them shall not re-detain Petitioner until he is provided

with written pre-detention notice and afforded a hearing before a neutral decisionmaker.

3. Petitioner may file a motion for an award of fees and expenses under the Equal Access to Justice Act within the time required by statute.

DATED this 23rd day of October, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge